Filed 7/19/23  P. v. Garcia CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARVIN OSUARD GARCIA,<br><br>    Defendant and Appellant. | G061714<br><br>(Super. Ct. No. 05NF3600)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Adrian R. Contreras and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Marvin Osuard Garcia appeals an order denying his motion to vacate a guilty plea he entered in 2006. (Pen. Code, § 1473.7, subd. (a)(1).)[1] He contends the motion should have been granted because he did not understand the immigration consequences of his plea. Based on our independent review of the record, however, we conclude appellant failed to carry his burden of proving his alleged lack of understanding by a preponderance of the evidence. We therefore affirm the trial court's ruling.

BACKGROUND

Born in El Salvador, appellant came to the United States when he was eight years old. He was a good student and graduated from high school in 1989. However, in the fall of 2005, he was charged in a felony complaint with possessing methamphetamine for sale in violation of Health and Safety Code section 11378.

Appellant had private counsel early on in his case, but after his preliminary hearing, Deputy Public Defender Diane Herring-Ysaguirre took over his representation. She appeared at several court proceedings with appellant and was his attorney of record when he pleaded guilty on July 31, 2006.

The terms and conditions of appellant's plea agreement are set forth in a change of plea form that was filed with the court on that day. The form states appellant was facing a minimum sentence of sixteen months in prison, and a maximum sentence of three years, for his alleged drug offense. But, in exchange for pleading guilty, he would instead get one year in jail and three years' probation. The agreement also called for appellant's probation to be revoked on three unrelated cases.

Appellant personally initialed several of the provisions on his change of plea form, including paragraph 11, which states: "**Immigration Consequences**: I understand if I am not a citizen of the United States, my conviction for the offense

_____

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

2

charged will have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Appellant also initialed paragraph 20, which stated he was offering his guilty plea "freely and voluntarily, and with full understanding of all matters" set forth in the change of plea form. And he initialed and signed paragraph 22, which provides: "I declare under penalty of perjury I have read, understood, and personally initialed each numbered item above, and I have discussed them with my attorney. I declare under penalty of perjury everything on this form is true and correct."

The next paragraph on the form was signed by appellant's attorney, Herring-Ysaguirre. It states, "I have discussed the charges and the facts with defendant. I have studied the possible defenses to the charges and discussed those possible defenses with defendant. I have discussed the possible sentence ranges and immigration consequences with defendant. I also have discussed the contents of this form with defendant. I concur with defendant's decision to waive the rights set forth on this form and to plead guilty."

The trial court accepted appellant's guilty plea, suspended imposition of sentence and placed him on three years' probation subject to various conditions, including the one-year jail term. Although appellant successfully completed that term, he failed to report to his probation officer upon his release and was returned to custody for violating the terms of his probation. Then, he was ordered removed from the country and deported to El Salvador, due to his 2006 conviction.

In 2009, appellant returned to Orange County and was promptly arrested.[2] He was sentenced to 16 months in prison for violating probation, but instead of being sent to prison, he was deported to El Salvador for a second time.

---

[2] The circumstances under which appellant returned to the United States are not disclosed in the record.

3

In 2011, appellant moved to Mexico, where he currently lives and works. A decade later, he consulted with the Serrato law firm to see if anything could be done that would allow him to return to the United States. On November 29, 2021, the firm filed a motion to vacate appellant's 2006 conviction pursuant to section 1473.7. The motion alleged appellant was entitled to relief because he did not meaningfully understand the immigration consequences of his guilty plea.

In support of the motion, appellant submitted a declaration that alleged the following: His sister and mother are both United States citizens. In the time leading up to his guilty plea in 2006, he was working at his mother's beauty salon and doing construction jobs on the side. He was the sole income earner for his baby boy and the boy's mother. Since then, he has had two other children that were born in the United States. Having grown up in the United States, where all his immediate relatives live, he has strong ties to this country and no significant ties to his native El Salvador.

Appellant further alleged that, prior to entering his guilty plea, his attorney Herring-Ysaguirre never spoke to him about the immigration consequences of the plea. Nor did she advise him to consult an immigration attorney or mention the possibility of pleading guilty to an alternative charge that would have allowed him to stay in the United States. Thus, he did not believe his plea would lead to his deportation. Indeed, according to appellant, he was never told there was "even a possibility" of being deported due to his plea.

In his declaration, appellant did admit that the trial judge advised him of the immigration consequences of his plea. However, he believed that was just a "general warning" that did not apply to him because otherwise his attorney would have told him so. If he had known that pleading guilty was going to result in his deportation, he "would have insisted . . . Herring-Ysaguirre obtain an alternative charge, even if it meant more jail time, because more jail time would have been nothing compared to permanent

4

separation from [his] family. If [he] could not obtain a better charge, [he] would have completely agreed to take [his] chances at trial."

Appellant's mother also filed a declaration on his behalf, expressing her belief that appellant would not have risked deportation and separation from his family had he been briefed on the immigration consequences of his guilty plea. In addition, one of appellant's current lawyers submitted a declaration stating that, in his experience as an immigration and criminal defense attorney, noncitizen defendants usually reject plea offers that can lead to their deportation. He further represented that appellant's underlying drug offense constitutes an aggravated felony under federal immigration law, and therefore he is permanently ineligible to reenter the United States.

The hearing on appellant's motion was brief. The prosecution opposed the motion without any argument, and appellant's attorney simply reiterated a few of the points presented in her motion. Neither side offered any new evidence for the trial court's consideration. Based on the documentary record, the court found appellant had a strong connection to the United States. However, given the representations he and his attorney had made on his change of plea form, the court found there was insufficient evidence to support his allegation that he failed to understand the immigration consequences of his plea. Therefore, it denied his motion, albeit without prejudice.

Seven months later, on July 1, 2022, the Serrato firm filed a second motion to vacate appellant's guilty plea under section 1473.7. The motion, which was heard by a different judge, does not mention anything about the first motion. While the arguments in both motions are similar, appellant's declaration in the second motion is materially different than his declaration in the first motion.

In his second declaration, appellant did not allege he was never told about the immigration consequences of his guilty plea or the possibility of deportation. Nor did he allege he was never advised to consult with an immigration attorney or informed of

5

possible alternative charges he could have pleaded guilty to that carried less severe immigration consequences.

Instead, appellant simply alleged, "At the time of my plea, I did not understand the severe immigration consequences my guilty plea in this case would cause. I was under the faulty impression that the conviction would not be a permanent bar to adjusting my legal status in the future. I believed, incorrectly, that because I had been in the country since 1989 that I would be able to qualify for some kind of immigration relief."

When the matter came up for hearing, the judge found appellant failed to use due diligence in terms of pursuing his rights under section 1473.7. It therefore denied his motion to vacate as untimely. This appeal followed.

DISCUSSION

Appellant contends he is entitled to a reversal because his motions were both timely and meritorious. Alternatively, he argues the matter should be remanded for further proceedings due to the California Supreme Court's recent decision in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*) and because the reporter's transcript of his plea hearing is no longer available. For the reasons explained below, we find appellant's motions were properly denied, and there is no basis for a remand.

Pursuant to section 1473.7, a person who is no longer in custody may seek to vacate a conviction on the ground it "is legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of" the conviction. (§ 1473.7, subd. (a)(1).) "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Ibid*.) This statute was enacted to provide out-of-custody defendants a means to challenge criminal convictions for which they have suffered unexpected immigration consequences. (*People v. Vivar* (2021) 11 Cal.5th 510, 517; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 976-977.)

6

Per the terms of the statute, a motion to vacate may be deemed untimely if it was not filed with reasonable diligence from the time the defendant suffered the adverse immigration consequences of his conviction. (§ 1473.7, subd. (b).) However, in this case, appellant suffered the adverse consequence of deportation before section 1473.7 became effective in 2017. Therefore, the timeliness question depends on whether he pursued his motion with reasonable diligence from the time he became aware of the statute. (*People v. Alatorre* (2021) 70 Cal.App.5th 747.)

Appellant's declarations do not specifically state when he became aware of the remedy available under section 1473.3. However, he alleged he did not become hopeful that anything could be done to improve his immigration status until he consulted the Serrato law firm in May 2021. This suggests he was unaware of his rights before then. And since the firm obviously needed time to research appellant's case and prepare his motions to vacate, we do not believe the motions were untimely. Although they were not filed until November 2021 and July 2022 respectively, there is nothing in the record to suggest they were not diligently pursued or that their timing impaired the prosecution's ability to oppose them.

That said, we do not believe appellant carried his burden of proving his entitlement to relief under section 1473.7. As our high court recently explained in *Espinoza*, to prevail under that statute, "The defendant must first show [by a preponderance of the evidence] that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' [Citation.]" (*Espinoza, supra*, 14 Cal.5th at p. 319.) On appeal, those issues are subject to independent review when, as here, the defendant's motion was litigated based solely on documentary evidence, as opposed to the testimony of live witnesses. (*Id*. at pp. 319-320.)

7

Utilizing that standard of review in *Espinoza*, the Supreme Court found the defendant did not meaningfully understand the immigration consequences of his plea. (*Espinoza, supra*, 14 Cal.5th at p. 320.) However, in that case, the defendant was merely advised his plea *may* have adverse immigration consequences for him. (*Id.* at p. 318.) No one ever advised him his plea *would* result in deportation. (*Id.* at pp. 318, 320.)

Here, in contrast, appellant's change of plea form expressly advised him that, not being a United States citizen, his guilty plea "*will* have the consequence of deportation[.]" (Italics added.) Appellant not only initialed that advisement, he declared under penalty of perjury that he had discussed it with his attorney and understood what it meant. Defense counsel also represented to the court that she had discussed the immigration consequences of the plea with appellant. And by appellant's own admission, so did the trial court.

In his first declaration, appellant challenged this evidence by alleging that his attorney never actually mentioned any immigration consequences to him before he pleaded guilty and that he was "not informed that were was even a possibility" he would be deported due to his plea. However, in his second declaration appellant omitted those allegations altogether. He also omitted his initial allegations that his attorney never asked him about his immigration status, informed him about the possibility of pleading guilty to an immigration-friendly charge, or advised him to consult with an immigration attorney before entering his plea.

These omissions cast doubt on the veracity of appellant's claim he was unaware his guilty plea would cause him to be deported. In fact, appellant's second declaration is wholly bereft of any such allegation. It merely suggests appellant was confused about the fact that he would not be allowed to reenter the United States once he was deported. In other words, over the course of his two motions, appellant changed his claim from, "I was never told I would be deported," to, "I didn't realize the consequences of my deportation would be so serious." This shift smacks of gamesmanship. It suggests

8

appellant has been less than candid in terms of expressing his understanding of his guilty plea, and rather than telling the truth about how he expected his plea to impact his immigration status, he has simply been trying to tailor his allegations to obtain a favorable outcome on his motions.

In any event, appellant's change of plea form listed both deportation and exclusion from the United States as potential consequences of his plea. Given everything reflected on the form, and in light of appellant's shifting allegations as to what he was told, he is not comparable to the defendant in *Espinoza*, who was truly unaware that his guilty plea would lead to his deportation. We therefore find that case inapt.

Because the trial court did not have the benefit of *Espinoza* at the time it adjudicated his motions, appellant asks us to consider remanding his case to allow the trial court to reconsider his motions in light of that decision. But that is unnecessary because we are in as good a position as the trial court to apply *Espinoza* to the documentary evidence that was presented in support of appellant's motions. (*Espinoza, supra*, 14 Cal.5th at pp. 319-320.) Having done so, we find appellant has failed to carry his burden of proving he did not meaningfully understand the immigration consequences of his plea. Accordingly, we need not determine whether he was prejudiced by his alleged lack of understanding, which is the second requirement for obtaining relief under section 1473.7.

Appellant offers an additional reason why we may want to remand the matter for further proceedings. He argues this remedy is necessitated by the fact the reporter's transcript of his 2006 plea hearing is not part of the appellate record. Although appellant's current attorney attempted to obtain a copy of that transcript for augmentation purposes, the court reporter who transcribed the proceedings has filed a declaration with this court stating she has no notes pertaining to that hearing.

Appellant contends the absence of a reporter's transcript violates due process and precludes meaningful appellate review. He asks that we remand with an

9

order for the parties to work out a settled statement of what was said at his plea hearing back in 2006. That way, a record could possibly be made of what the trial judge said to him and what efforts defense counsel made insofar as advising him of the immigration consequences of his plea.

However, appellant never requested a settled statement in the trial court. Nor is there any indication he ever attempted to obtain information from his plea attorney to support his motions to vacate. Appellant cannot be heard to complain on appeal about the absence of evidence he never tried to procure in the trial court.

Beyond that, the minute order of the plea hearing states the trial judge admonished appellant regarding the immigration consequences of his plea, and appellant himself admitted as much in his declarations to the trial court. As we have explained, he also backed down from his initial allegation that his attorney failed to advise him that he would be deported if he decided to plead guilty. Under these circumstances, the lack of a transcript of appellant's plea hearing is not cause for reversal.

## DISPOSITION

The order denying appellant's motion to vacate his guilty plea is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.

10