Filed 8/2/24  P. v. Kapila CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANKUSH KAPILA,<br><br>Defendant and Appellant. | C099098<br><br>(Super. Ct. No. CRF180002397A) |

Defendant Ankush Kapila, a noncitizen legal resident, appeals the trial court's denial of his Penal Code section 1473.7 (further undesignated section references are to the Penal Code) motion to vacate his plea in one of his three criminal cases.  Defendant challenges the trial court's exercise of discretion, arguing the court's misunderstanding of facts resulted in an abuse of discretion.  These arguments fail to acknowledge this court's duty to exercise our independent judgment in reviewing the denial of defendant's motion. (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*).)  Having done so, we find defendant has failed to establish he was entitled to relief.

## BACKGROUND

Defendant was born in India in August 1995.  He immigrated to the United States in July 2010 and was granted legal permanent resident status.

1

*A.     The Underlying Convictions*

In October 2014, defendant pled guilty to assault likely to cause great bodily injury (§ 245, subd. (a)(4)) in case No. CRF140211 (the assault case), and in exchange, he was placed on probation and ordered to serve nine days in county jail

Defendant pled no contest to criminal threats (§ 422) in 2019 in case No. CRF180002397 (the criminal threats case), and in exchange, the remaining count and several unrelated misdemeanors were dismissed, and defendant was placed on probation. In pertinent part, his initialed plea form stated that he understood the consequences of his plea, including that "if I am not a citizen of the United States, I will be deported from the country, denied citizenship, and denied re-entry into the United States." It appears he was still on probation for the assault case at the time of this plea. Defendant admitted violating this probation in 2019 and his probation was reinstated.

In 2020, defendant admitted violating his probation in the criminal threats case by committing identity theft (§ 530.5) in case No. CRF202292 (the identity theft case). As part of this plea deal, defendant was returned to probation.

In January 2022, another probation violation petition was filed against defendant, this time alleging eight violations, including violations of the Penal and Health and Safety Codes. Defendant's probation was summarily revoked, and his request for release on his own recognizance was denied in light of the court's "significant concerns about public safety."

On March 7, 2022, defendant rejected the People's offer for two years concurrent in the criminal threats case, the identity theft case, and a new case for a total aggregate term of two years. On March 25, 2022, the matter was put over to allow defendant's attorney to research some "immigration issues." The trial on the violations of probation occurred on April 29, 2022, wherein the People presented three witnesses, and the trial court found defendant had committed seven of the eight alleged probation violations.

Thereafter, on June 13, 2022, the trial court elected not to reimpose probation and sentenced defendant to the midterm of two years for the criminal threats case plus a

concurrent term of two years for the identify theft case, resulting in an aggregate prison term of two years. Defendant's other pending case was dismissed in the interests of justice. Following defendant's release from prison, he was taken into the custody of immigration and customs enforcement (ICE) and found to be removable as an aggravated felon.

B.       *The Proceedings to Vacate Defendant's Plea*

On April 21, 2023, defendant filed a motion to vacate his plea (§ 1473.7) in the criminal threats case arguing he did not understand the immigration consequences at the time of his plea, he was facing those adverse consequences, and had he "understood the consequences and alternative plea options, he would not have entered a plea to the charge." His brief focused on his original plea, claiming no one told him that agreeing to a one-year suspended sentence would render him "deportable as an offense categorized as a crime of moral turpitude (CIMT) or aggravated felony under immigration law." The brief also inaccurately represented that he had "admitted a subsequent violation of probation and was resentenced to two years in State Prison on June 22, 2022."[1] Defendant asserted, "The plea in the present case is invalid based upon defendant's uninformed plea which left him without a meaningful understanding of the consequences of his plea and without an understanding of alternative plea options in violation of defendant's rights to due process, right to a fair trial, and the corresponding rights under the state [C]onstitution." Defendant represented "he would not have accepted the plea bargain without further negotiations had he known of the potential [crime of moral turpitude] and immigration consequences resulting from his 2014 plea . . . ." Rather, "he would have defended against the immigration consequences by negotiating an alternate, immigration-safe plea bargain that would have avoided a [crime of moral turpitude]."

---

[1] This representation is inaccurate as he was sentenced to two years in prison following probation violation trial, not an admission.

3

As to prejudice, defendant argued he "did not understand the dire immigration consequences of his plea deal and subsequent negotiated disposition which would result in a [crime of moral turpitude] and an aggravated felony." According to defendant, his "conviction in the underlying case rendered him deportable without relief despite the fact that he was a legal permanent resident with strong ties to the U.S. through his [legal permanent resident] status and his connection to his immediate and extended family -- who are all in the U.S. legally, with the vast majority living here as citizens." Further, defendant maintained there were reasonable plea alternatives that would have avoided the negative immigration consequences that he could have accepted at the time of the plea, but he failed to negotiate for them because he was unaware of the negative consequences he was facing. Nonetheless, the brief summarized, "if defendant had meaningfully understood the certain immigration consequences of his guilty plea versus the potential risks and rewards of going to trial or negotiating an alternative plea, it is reasonably probable that he would have not pleaded guilty."

Notably, the defendant's declaration that purportedly contained the evidence supporting these claims was not attached to the motion and is not part of the record on this appeal. Accordingly, none of the brief's assertions concerning defendant's knowledge and intentions are supported by cognizable evidence. (See *People v. Carillo* (2024) 101 Cal.App.5th 1, 7 (*Carillo*) [attorney's factual assertions in briefing is not evidence].)

However, defendant did submit the declaration of an immigration attorney, which erroneously represented that defendant was sentenced to two years in prison *after admitting probation violations* in the criminal threats and identity theft cases. This declaration further showed defendant's conviction in the assault case, which the attorney conceded was also a deportable offense (although it had not been alleged by ICE) because defendant committed the offense within five years of admission to the United States and noted it could be punished by a sentence of more than one year. This attorney then related various ways defendant might have avoided negative immigration

4

consequences in all three cases, including serving a two-year sentence on the identity theft and agreeing to a sentence of up to 364 days for the criminal threats.

The People opposed defendant's request, arguing the statute applied only to guilty pleas—not probation violation admissions, that defendant could not establish prejudice, and there was no failure to seek an immigration neutral disposition as there was no possible immigration-safe disposition that would also have served the interests of justice. In support of this opposition, the People filed a declaration from the deputy district attorney who had negotiated the plea in the criminal threats case. That deputy district attorney attested to being aware of the immigration consequences of that plea, that he had advised defendant's attorney there would be immigration consequences, and the deputy district attorney would not have changed the offer that defendant ultimately accepted.

Defendant's reply brief argued in pertinent part that he was entitled to relief under *Vivar*, *supra*, 11 Cal.5th at page 533.

The trial court continued the May 26, 2023, hearing on defendant's motion to allow the court to review the parties' submissions and the transcripts from defendant's plea and sentencing.

Defendant's motion was heard on June 30, 2023. At that hearing, defendant's counsel argued the issue concerning the criminal threats case was "not the plea itself but rather the sentence." Defendant's counsel inaccurately represented that defendant's probation violations had been "combined for a global resolution and it's that global disposition on a probation violation that in fact was the aggravated felony." Defendant's counsel posited the two-year sentence could have been based solely on the identity threat count, thereby avoiding the adverse immigration consequences without any adverse consequences to the People. In response, the People argued that defendant had been advised of the adverse immigration consequences as per his plea form, had been assisted by his attorney and an interpreter in entering that plea, and that there was no evidence that he failed to understand his "pleas could affect his immigration and citizenship status."

5

The trial court denied the motion. Defendant timely appealed.

## DISCUSSION

Defendant argues the trial court abused its discretion based upon a misunderstanding of the facts and applicable law. Specifically, he faults the trial court for failing to focus on the June 2022 "negotiated global disposition" to the probation violations in the criminal threats and identity theft cases, positing a simple restructuring of the sentence could have avoided the adverse immigration consequences. Defendant continues that this focus on the earlier proceedings also caused the court to rely on "erroneous facts" in evaluating the contemporaneous facts supporting a showing of prejudice. Defendant's arguments are based upon a misunderstanding of the facts and applicable law. We find defendant has failed to demonstrate error.

*Applicable Law*

"Section 1473.7 permits noncitizens to vacate convictions after they are no longer in criminal custody based on a failure to understand adverse immigration consequences of their convictions." (*People v. Singh* (2022) 81 Cal.App.5th 147, 151-152 (*Singh*).)

"The versions of section 1473.7, subdivision (a)(1) in effect from January 1, 2019, through December 31, 2021, stated a person no longer in criminal custody could file a motion to vacate a conviction or sentence for the following reason: 'The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a *plea of guilty or nolo contendere*.' (Stats. 2020, ch. 317, § 5, italics added; Stats. 2018, ch. 825, § 2, italics added.)" (*Carillo*, *supra*, 101 Cal.App.5th at p. 13.)

"In 2021, the Legislature amended the statute by replacing the phrase 'plea of guilty or nolo contendere' with the broader phrase 'conviction or sentence.' (Stats. 2021, ch. 420, § 1.) The amendment 'expand[ed] the category of persons able to seek to vacate a conviction or sentence as legally invalid, whatever way that person was convicted or sentence[d], including a person who was found guilty after a trial.' (Sen. Com. on Public

Safety, Analysis of Assem. Bill No. 1259 (2021-2022 Reg. Sess.) as introduced Feb. 19, 2021; [*Singh, supra*, 81 Cal.App.5th at pp.] 152-153 [defendants whose convictions derive from a trial are eligible for relief under [section] 1473.7; amendment created ameliorative changes].) The amendment became effective on January 1, 2022. (*Singh, supra*, at p. 152.)" (*Carillo, supra*, 101 Cal.App.5th at p. 13.)

A court "shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence" that "the conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473, subds. (e)(1), (a)(1).) Thus, a defendant seeking relief must show he " 'did not meaningfully understand the immigration consequences' " of his sentence and that this " 'misunderstanding constituted prejudicial error.' " (*Carillo, supra*, 101 Cal.App.5th at p. 14.) The statute does not define prejudice, but in the context of this type of case, it has been explained "that a defendant who decides to go to trial, loses, and is sentenced" can establish prejudice by showing "a reasonable probability that (1) [he] would have done something differently—that is, would [have] taken another 'path.' (*Vivar, supra*, at p. 529—and (2) the alternate path would have resulted in an immigration neutral outcome." (*Carillo*, at p. 20.) "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473, subd. (a)(1).)

"We exercise our independent judgment in reviewing appeals from section 1473.7 hearings." (*Singh, supra*, 81 Cal.App.5th at p. 154; *Vivar, supra*, 11 Cal.5th at pp. 526-527.) "When, as here, a trial court's factual findings are derived entirely from documents (i.e., a cold record), the trial court and appellate courts are in the same position and deference to the trial court's findings is unwarranted. ([*Vivar*,] at p. 528.)" (*Carillo, supra*, 101 Cal.App.5th at p. 14.)

*Analysis*

Here, in reaching its decision to deny defendant's motion the trial court focused on prejudice and determined: (1) defendant had been assisted by an interpreter at his plea and sentencing hearings; (2) none of the suggested immigration-safe alternative crimes fit with the circumstances of the case; and (3) there was no substantial contemporaneous evidence that defendant would have rejected his plea agreement, thus distinguishing the matter from *Vivar*. Defendant faults these determinations for focusing on his original plea in the criminal threats case. Having evaluated his arguments in the context of the evidence before the trial court and exercising our independent judgment, we conclude defendant failed to demonstrate he was entitled to relief.

We begin with defendant's first contention that the trial court erred in not focusing on his June 2022 "global disposition" of the probation violation cases, positing a simple restructuring of his prison sentence could have avoided the adverse immigration consequences. This argument is not supported by the record. Defendant did not negotiate a *global disposition* of the probation violations in these cases. Rather, he had a probation violation *trial*, was found to have violated his probation, and was sentenced to prison by a trial court exercising its discretion to select an appropriate sentence. (§ 1170.) Accordingly, his arguments that he would have altered the *global disposition* had he been aware of the immigration consequences are contrary to the record.

Moreover, even if we were to consider the settlement negotiations leading up to the trial on the probation violations—an argument that defendant did not make and has forfeited in this appeal[2]—the appellate record does not contain the specifics of what

---

[2] While previous caselaw had determined admissions of probation violations did not fall under the purview of section 1473.7 (see *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 220-221), we recognize that at least one case has found the provision does apply following the 2021 amendments where a defendant failed to "meaningfully understand or defend against the 'actual or potential adverse immigration consequences of' the additional incarceration imposed for a probation violation." (See *Carillo*, *supra*, 101 Cal.App.5th at p. 5.) Nonetheless, defendant's failure to argue he would have made an

8

defendant understood at this juncture because his declaration in support of his motion does not appear to have been filed below. Accordingly, there is no evidence that he would not have gone to trial on his probation violations had he been aware of the immigration consequences he was facing. (*Carillo*, *supra*, 101 Cal.App.5th at p. 7.)

Further, unlike *Vivar*, the record does not indicate that defendant would have been able to negotiate an immigration neutral plea deal. (*Vivar*, *supra*, 11 Cal.5th at p. 531.) Rather, the record shows the pending settlement offer that was rejected prior to defendant's probation violation trial was for two years concurrent in the criminal threats case, the identity theft case, and a new case for an aggregate term of two years. After rejecting this offer, the matter was put over to allow defendant's attorney to research some "immigration issues." Thus, the record does not support defendant's assertion that the trial court erred in failing to recognize in its prejudice analysis that he could have negotiated an immigration-safe alternative sentence at the probation violation juncture. This is true despite the declaration of defendant's immigration attorney that there were immigration neutral ways to structure his two-year prison sentence without triggering mandatory deportation. The possible viability of those alternatives is not supported by the record.

Finally, the record lacks other contemporaneous evidence establishing the trial court abused its discretion in determining defendant had not demonstrated prejudice. In *Vivar*, the defendant had written numerous contemporaneous letters containing facts supporting the proposition that he never would have pleaded guilty had he known it would have resulted in deportation. (*Vivar*, *supra*, 11 Cal.5th at pp. 530-531.) But here the record contained no information concerning defendant's intentions and what he would have done had he understood the immigration consequences of taking his probation

immigration-neutral plea deal instead of *going to trial* has forfeited this argument on appeal. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1.) In fact, defendant argued in his reply brief that the true procedural posture of the case is "irrelevant to the present appeal."

9

violations to trial. Moreover, we cannot fault the trial court for failing to consider contemporaneous evidence to a negotiated global disposition plea deal that never existed. In light of these shortcomings and our consideration of the totality of the circumstances as described herein, we find defendant has failed to show he was entitled to relief under section 1473.7.[3]

## DISPOSITION

The judgment is affirmed.

/s/
Mesiwala, J.

We concur:

/s/
Renner, Acting P. J.

/s/
Krause, J.

---

[3] We note in closing that defendant's conviction for assault likely to cause great bodily injury (§ 245, subd. (a)(4)) is a deportable offense—as conceded by his immigration attorney's declaration—further suggesting that defendant cannot demonstrate trial court error that prejudiced him in this appeal. (Cal. Const., art. VI, §13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)