Filed 1/14/25  P. v. Torres CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062894 |
| v. | (Super. Ct. No. 97CF2142) |
| ALFREDO TORRES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Larry Yellin, Judge. Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General,

Christopher P. Beesley and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

In May 2023, Alfredo Torres moved pursuant to Penal Code section 1473.7, subdivision (a)(1),[1] to vacate his 1997 felony convictions on the ground that he was unaware of the immigration consequences of his guilty plea and would not have entered the plea had he been aware. The trial court denied the motion, and Torres appealed. We affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

TORRES'S 1997 CRIMES AND GUILTY PLEA

Torres was born in Mexico in 1972 and came to the United States in 1989 or 1990, when he was approximately 17 or 18 years old. He fathered four children in the United States, who were born in 1990, 1993, 1995 and 1996.[2]

According to the factual basis for his guilty plea, on July 19, 1997, Torres raped his spouse using force and fear, inflicted corporal injury on her resulting in a traumatic condition, assaulted her with a belt, and had a usable quantity of cocaine in his possession. He was charged by the Orange

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The record indicates Torres fathered two other children who are not American citizens, but no other information is provided about them, including, e.g., their whereabouts or the nature and strength of his relationship with them.

County District Attorney with four felonies[3] and was facing a maximum prison sentence of eight years and eight months. In December 1997, Torres pleaded guilty to all four counts and was sentenced to the low term of three years in prison for count 2, with 156 days of credit for time served.[4]

As to the immigration consequences of his plea, Torres initialed the paragraph on the plea form that stated: "I understand that if I am not a citizen of the United States the conviction for the offense charged *may* have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.) Torres's attorney signed the plea form attesting that he had "explained each of the above rights to the defendant." The trial court's minute order in connection with the plea and sentencing states that Torres was advised of the consequences of the plea if he is not a citizen. The court explained on the minute order that he was imposing the low term of three years "in view of [defendant's] plea at an early stage in the proceedings."

## II.

### TORRES'S 2023 MOTION TO VACATE HIS CONVICTION

In May 2023—approximately 22 years after he was released from custody in connection with his 1997 conviction—Torres filed a motion to

---

[3] Torres was charged with one count of corporal injury to a spouse (§ 273.5, subd. (a) [count 1]), one count of spousal rape (former § 262, subd. (a) [count 2]), one count of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a) [count 3]), and one count of assault with a deadly weapon (§ 245, subd. (a)(1) [count 4]).

[4] The court stayed the sentence as to counts 1 and 4 pursuant to section 654. It also ordered the sentence as to count 3 stayed pending completion of the sentence on count 2 and, thereafter, permanently stayed.

vacate his conviction pursuant to section 1473.7.[5] According to an immigration attorney who submitted a declaration in support of Torres's motion, "[a]s a direct result of his plea, Mr. Torres has been deemed inadmissible and deportable for having admitted guilt to *per se* deportable offenses." The attorney also concluded Torres "is statutorily ineligible for immigration relief because he has been convicted of a crime of domestic violence."

Torres submitted a declaration in support of his motion, stating the attorney from the alternate public defender's office who represented him when he entered his guilty plea "did not discuss with [Torres] the possibility of facing any immigration consequences if [Torres] entered a guilty plea," did not ask Torres about his immigration status, and did not inform him of the "option to plead guilty to alternative charges." Torres stated he was not aware when he entered the guilty plea that he could be deported as a result of his plea and that he never would have entered a guilty plea had he understood the immigration consequences of doing so. Torres stated in his declaration that he would have "insisted that [his attorney] obtain an alternative charge, even if it meant more jail time" or would have "completely agreed to take [his] chances at trial." The motion was also supported by letters from two of Torres's brothers, his stepmother, and the pastor from his church.

The trial court held a non-evidentiary hearing in June 2023 and denied the motion. Torres timely appealed.

---

[5] Section 1473.7 did not go into effect until January 1, 2017 (added by Stats. 2016, ch. 739, § 1), and was amended on January 1, 2019 (Stats. 2018, ch. 825, § 2).

4

DISCUSSION

I.

GOVERNING PRINCIPLES

When pleading guilty to a criminal offense, noncitizen residents of the United States must receive "clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient." (*People v. Vivar* (2021) 11 Cal.5th 510, 516.) "[S]ection 1473.7[, subdivision (a)(1),] allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*); § 1473.7, subds. (a)(1), (e)(1).)

To obtain relief, "[t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Espinoza, supra,* 14 Cal.5th at p. 319.) "Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Ibid.*) "To establish prejudicial error, a defendant must demonstrate a 'reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences' [citation] and must corroborate any assertions with ""objective evidence"" [citation]." (*Id.* at p. 316.) If the motion is meritorious, the court must allow the defendant to withdraw the plea. (§ 1473.7, subd. (e)(3).)

A trial court's ruling on a motion brought under section 1473.7 is appealable pursuant to section 1237, subdivision (b) (§ 1473.7, subd. (f)) and is subject to independent review (*People v. Vivar, supra,* 11 Cal.5th at pp.

5

523–524). "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.'" (*Id*. at p. 527.) "Where, as here, the facts derive entirely from written declarations and other documents [then] it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

II.

TORRES DID NOT SHOW PREJUDICIAL ERROR FROM HIS ALLEGED LACK OF UNDERSTANDING OF THE IMMIGRATION CONSEQUENCES OF HIS PLEA

Torres contends the trial court should have granted his motion to vacate his guilty plea under section 1473.7. We disagree. Based on our independent review of the evidence submitted in support of the motion, we conclude Torres failed to meet his burden of showing there was a reasonable probability he would have rejected the plea offer had he understood the immigration consequences of the plea. (*Espinoza, supra,* 14 Cal.5th at p. 320.) Accordingly, for purposes of our analysis, we assume, but do not decide, that Torres met his burden on the first prong to show he did not meaningfully understand the immigration consequences of his plea. (*Id*. at p. 319.)

"To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.] Also relevant are the defendant's probability of obtaining a more favorable

6

outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza, supra*, 14 Cal.5th at pp. 320–321.)

"A defendant must provide """objective evidence""" to corroborate factual assertions. [Citations.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra*, 14 Cal.5th at p. 321.)

We begin with the evidence of Torres's ties to the United States. Such ties "are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities." (*Espinoza, supra*, 14 Cal.5th at p. 321.) "Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Ibid.*)

Torres's declaration states he has "strong ties to the [United States] because I arrived when I was a teenager, worked here, and established a family." He further states that he has "no significant ties to my home country of Mexico, since most of my immediate relatives are living in the U.S."[6] He states he would have accepted more jail time on an alternative charge "because more jail time would have been nothing compared to permanent separation from my children and extended family" and because

---

[6] Torres does not identify and provides no evidence regarding the other members of his immediate family who are not living in the United States.

"staying in this country with my family was and is the most important thing to me."

But there is little to no objective evidence to support these conclusory assertions of the strength of Torres's familial ties. Torres's declaration provides no evidence regarding his involvement in the lives of his four U.S. citizen children or the extent of his interaction with them, either before he was charged and sentenced or after his prison term was concluded. Two of his brothers and his stepmother submitted unsworn letters—often using identical language—saying, in conclusory fashion, that Torres worked hard to support his family and keep the family together.[7] But there is no evidence Torres had strong, loving ties with his four U.S. citizen children. None of those children (who would now be adults) submitted a declaration or letter in support of his motion. As noted above, Torres provides literally no information about his other two children, who are not U.S. citizens.

Nor is there any evidence—either in Torres's declaration or in the letters from his brothers and stepmother—detailing his relationship with his "extended family," or showing the extent of his involvement in their lives and the amount of interaction he had with them, either before he entered his guilty plea or after he completed his sentence. There are no facts presented by Torres's motion that "support an inference that immigration consequences were of paramount concern at the time of the defendant's guilty plea." (*Espinoza, supra,* 14 Cal.5th at p. 323.) Regarding his immigration status,

---

[7] None of the four letters submitted with Torres's motion—including those from his stepmother, brothers and pastor—meets the requirements of a sworn declaration. They therefore do not constitute admissible evidence. Nevertheless, because the trial court appears to have reviewed and considered them, we do the same.

Torres does not contend he was a lawful permanent resident of the United States when he was convicted.

A little more detail is provided regarding Torres's involvement with a local church. His pastor submitted an unsworn letter stating he became Torres's pastor in 2008 (11 years *after* Torres's plea) and that Torres is now an important member of the church. Torres states in his declaration that "for about two or three years" he has been a district leader for the church. But none of this addresses the strength of Torres's community ties at the time he made his plea decision in 1997. The fact that Torres started attending a church nearly a decade *after* being released from prison does not support an inference that at the time of his plea he had "deep and long-standing ties" to a religious community that would have factored heavily in his calculus whether to accept the plea deal offered to him. (*Espinoza, supra*, 14 Cal.5th at p. 323.)

Torres asserts he had long-standing employment ties in the United States. But his declaration is notably vague on the subject. He says he "maintained meaningful employment" for some unspecified period of time, and he gives the name of a company for whom he asserts he "worked anywhere from 42 to 59 hours weekly as a means to provide for my family"— also for an unspecified period of time. Torres's stepmother and one of his brothers each say (in identical language) that Torres was "hard-working" and that he "worked very hard to support his family." Another brother describes Torres as "hardworking" and said in his letter that, prior to his arrest, Torres "was working full time to provide a roof and food on the table for his four children and his partner." But the facts offered to support these conclusory assertions are thin, to say the least. In support of his contention that he had strong employment ties to the community, Torres submitted only three

9

paystubs covering approximately one month in 1997. Torres did not submit a single declaration from any employer or any other proof of long-standing or consistent employment.

We turn to other factors relevant to our analysis of whether there is a reasonable probability Torres would have rejected the plea offer had he understood its immigration consequences. We conclude Torres failed to show by a preponderance of the evidence that there is a reasonable probability he would have rejected the plea offer and rolled the dice at trial. Torres was facing a maximum prison sentence of eight years and eight months, and he received the low term of only three years in prison for his conviction on count 2, for spousal rape. Torres acknowledges in his appellate briefing—as he must—that he received a "minimal sentence," but argues that the light sentence supports a presumption that "the crime was not sufficiently aggravated, or [that he] had factors in his past, that suggest he would [not] have . . . received the maximum time." The record, however, does not support this supposition. The trial court did not leave us to guess at its reason for imposing the minimal sentence. To the contrary, it explained exactly why it sentenced Torres to the low term of three years: it was because "of [Torres's] plea at an early stage in the proceedings."

Moreover, Torres submitted no evidence showing it was probable he would have obtained a more favorable outcome had he not pleaded guilty to the charges. Torres also submitted no evidence showing there were alternative, immigration-neutral charges to which he could have pleaded guilty. Torres did submit a declaration from an immigration attorney stating, among other things, that he would have *advised* Torres's criminal defense attorney to have Torres *explore* an alternative plea to avoid immigration consequences. But that declaration does not provide any information

10

regarding what those charges might have been and whether they actually would have been available to Torres based on the circumstances of his crimes.

The evidence submitted by Torres is a far cry from the evidence found sufficient in *Espinoza, supra*, 14 Cal.5th 311. Espinoza lived in the United States for over four decades, had many family members who are United States citizens, including a wife, six children and parents who were ill and living under his care, he became a lawful permanent resident, purchased a home, and had extensive work history and community involvement. (*Id.* at pp. 317–318.) Under these circumstances, the Attorney General agreed Espinoza's evidentiary showing established prejudicial error. (*Id.* at p. 321.)

Based on the evidence submitted in support of Torres's motion and the totality of the circumstances here, we independently conclude Torres did not carry his burden to show prejudice. Torres's statement that he would have taken his chances at trial had he known his conviction would lead to severe immigration consequences is entirely self-serving and insufficient, particularly considering the significant eight-year prison sentence he was facing compared to the low term offered to him by the court, the lack of evidence that there were alternative charges to which Torres could have pleaded guilty without suffering immigration consequences, and the lack of evidence of strong community ties that would have made the prospect of deportation an integral part of Torres's calculus in evaluating the plea offer. (*Espinoza, supra*, 14 Cal.5th at p. 321.) Accordingly, the court did not err in denying his motion.

DISPOSITION

The postjudgment order is affirmed.

                                                  GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.