Filed 3/26/26  P. v. Osorio CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>ISMAEL SESAM OSORIO,<br><br>    Defendant and Appellant. | A171074<br><br>(San Mateo County<br>Super. Ct. No. 19-NF-008781-A) |

Defendant Ismael Sesam Osorio appeals from the trial court's postjudgment order denying his motion to withdraw his guilty plea based on resulting immigration consequences.  He contends he was never informed his plea would have negative immigration consequences and would not have accepted the plea had he been properly informed.  We disagree and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

The San Mateo District Attorney charged Osorio with multiple offenses arising from a sexual relationship with a minor.  The information alleged unlawful sexual intercourse with a minor (Pen. Code,[1] § 261.5, subd. (c); counts 1, 4–6), oral copulation of a minor (§ 287, subd. (b)(1); count 2), forcible

---

[1] All further undesignated statutory references are to the Penal Code.

oral copulation of a minor (§ 287, subd. (c)(2)(C); count 3), and possession of child or youth pornography (§ 311.11, subd. (a); count 7).

The charges relate to a year-long sexual relationship between Osorio, then over 30 years old, and a 15-year-old minor. Police obtained a nude photograph of the minor engaged in sexual activity with Osorio from Osorio's partner. Osorio admitted having sex with the minor during a "pretext call," and later made similar admissions to the probation department. The probation report noted that Osorio "admitted he was aware the victim was a minor when he had sexual intercourse with her and knew that it was a crime to engage in a sexual relationship with a minor."

Osorio ultimately pled no contest to one count of unlawful sex with a minor. The plea agreement form signed by Osorio stated, "I understand that if I am not a citizen, conviction of the offense for which I have been charged **will** have the consequences of deportation, exclusion from admission to the United States or a denial of naturalization."

Osorio acknowledged he read and understood the plea waiver at the subsequent hearing, during which a Spanish interpreter was present. The court also asked, "[D]o you also understand if you are not a citizen, you will be deported, excluded from admission, and denied naturalization to the United States," to which Osorio responded, "Yes." The court accepted Osorio's plea.

At sentencing, the court denied Osorio's request for supervised probation and imposed the low term of 16 months in county jail. The court also ordered Osorio to register as a sex offender for 10 years and issued a no-contact order prohibiting contact with the minor.

Osorio later filed a *Wende*[2] brief challenging "the sentence or other matters occurring after the plea that do not affect the validity of the plea." In an unpublished opinion, this court found no arguable issues requiring further briefing and affirmed the judgment. (*People v. Osorio* (March 25, 2022, A162881).)

Osorio subsequently moved to vacate his plea under section 1473.7, subdivision (a)(1). In support of the motion, Osorio stated he had lived in the United States as an undocumented immigrant since 2006. Osorio asserted his primary languages are Achi (a Mayan dialect) and Spanish, and his appointed counsel never utilized a Spanish-speaking interpreter. According to Osorio, his counsel advised him to enter a no contest plea, "promised" there would be no immigration consequences, and told him the conviction would not affect his ability to legalize his status in the future. Osorio stated that had he understood the immigration consequences of the plea, he would have taken the case to trial or sought the assistance of an immigration attorney.

The Attorney General opposed the motion, arguing Osorio had not established the plea was invalid under section 1473.7 because he failed to demonstrate prejudice. The Attorney General maintained that Osorio was aware of the consequence of his plea and did not show that an immigration-neutral plea was possible. Instead, the Attorney General argued, the only evidence supporting a finding of prejudice was Osorio's self-serving declaration stating he would not have accepted the plea had he known it could impact his immigration status.

The trial court held an evidentiary hearing at which Osorio's trial counsel, Brandon Douglass, testified regarding his representation. Douglass stated he used a Spanish interpreter for some conversations with Osorio.

---

[2] *People v. Wende* (1979) 25 Cal.3d 436.

Douglass discussed the strength of the prosecution's case and advised Osorio that it was not a favorable case to present to a jury.

Douglass also testified regarding plea negotiations. Douglass noted the prosecution initially sought a two-year maximum sentence, and Douglass understood the prosecution's primary goal was that Osorio serve custody time rather than receive probation. Douglass believed the negotiated disposition represented Osorio's best opportunity to receive a probationary sentence with less than 364 days in custody. Douglass acknowledged Osorio originally faced significantly more serious charges than the offense to which he ultimately pleaded. In addition, the plea also carried only discretionary sex-offender registration, whereas other charged offenses required mandatory registration. Accordingly, Douglass believed the offer that was extended was the best option.

With respect to immigration consequences, Douglass testified that Osorio stated he was undocumented but provided no additional information regarding his immigration status. Douglass researched the immigration consequences of the proposed charge and concluded the offense would not constitute an aggravated felony and would not automatically trigger deportation. He relayed this information to Osorio. However, Douglass acknowledged he had not considered—and therefore did not advise Osorio about—how the length of the sentence could affect immigration proceedings.

Following the hearing, the court denied Osorio's motion. The court found that a preponderance of the evidence demonstrated Osorio did not meaningfully understand and accept the potential adverse immigration consequence of his plea. The court noted testimony from counsel and a declaration from an immigration expert indicated the length of sentence imposed had negative immigration consequences, and those consequences

4

were not explained to Osorio. Nevertheless, the court concluded Osorio failed to establish prejudice—i.e., that he would have rejected the plea had he understood those potential consequences.

In reaching that conclusion, the court emphasized several factors. First, Osorio faced "multiple felony charges" that carried substantial prison exposure and mandatory lifetime sex-offender registration if convicted. Second, defense counsel believed the case was not favorable for trial in light of the seriousness of the charges and the strength of the evidence. The court noted the evidence against Osorio included a photograph depicting Osorio and the victim engaged in sexual conduct. Third, the prosecution made clear that it sought a meaningful custodial sentence for Osorio. The court emphasized the prosecution "was not offering an immigration friendly disposition in this case. . . . [T]hey wanted [Osorio] to do time."

The court also questioned Osorio's credibility regarding his claim that immigration consequences were his primary concern. The court noted Osorio had an immigration attorney during the relevant period who assisted with work permit renewals, yet Osorio never asked that attorney to pursue his asylum application. Osorio also did not raise immigration concerns with his original criminal defense attorney and only informed Douglass that he was undocumented. The court further noted that while Osorio had family in the United States, he also had a wife, parents, and two children in Guatemala with whom he was in contact and was supporting.

Based on the totality of the circumstances, the court concluded Osorio had not shown a reasonable probability he would have rejected the plea had he understood its immigration consequences. The motion to vacate was therefore denied. Osorio timely appealed.

**DISCUSSION**

On appeal, Osorio asserts the trial court misapplied section 1473.7 in denying his motion to vacate. We disagree.

## I. Governing Law

Section 1473.7 permits a noncitizen who has completed a criminal sentence to move to vacate a conviction upon establishing, by a preponderance of the evidence, that his or her conviction is "legally invalid due to prejudicial error damaging [the person's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1); see *id*., subd. (f)(1).)

To establish prejudicial error, a defendant must demonstrate a "reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).) Courts evaluate this question by assessing the " 'totality of the circumstances,' " considering factors such as the " 'defendant's priorities in seeking a plea bargain' " and the likelihood "of obtaining a more favorable outcome if [the defendant] had rejected the plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*).) Defendants must corroborate any assertions with " ' "objective evidence." ' " (*Vivar*, *supra*, 11 Cal.5th at p. 530.) Such evidence may include " 'facts provided by declarations, contemporaneous documentation of the defendant's [collateral] concerns or interactions with counsel, and evidence of the charges the defendant faced.' " (*In re Tellez* (2024) 17 Cal.5th 77, 88.)

We review the trial court's ruling on a section 1473.7 motion independently. (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1173.) In

6

conducting that review, however, we defer to the trial court's factual findings when they rest on credibility determinations regarding witnesses the trial court heard and observed. (*Vivar, supra*, 11 Cal.5th at p. 527.)

## II. Analysis

A defendant who rejects a plea generally faces two potential paths: proceeding to trial or attempting to negotiate an immigration-neutral plea. (*Vivar, supra*, 11 Cal.5th at p. 529.) Accordingly, when a defendant claims he or she did not understand the immigration consequences of a plea, the prejudice inquiry typically examines whether the defendant would have pursued one of those options had he or she understood those consequences. (*Id.* at pp. 529–530.) A defendant need not show the alternative course would have produced a more favorable result. (*Id.* at pp. 528–529.)

In *Espinoza, supra*, 14 Cal.5th 311, the California Supreme Court identified several factors relevant to the "totality of the circumstances" analysis. These factors include: (1) " 'the defendant's ties to the United States' "; (2) "the importance the defendant placed on avoiding deportation"; (3) "the defendant's priorities in seeking a plea bargain"; (4) "whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible"; (5) "the defendant's probability of obtaining a more favorable outcome if he had rejected the plea"; and (6) "the difference between the bargained-for term and the likely term if he were convicted at trial." (*Id.* at p. 320.)

Osorio contends the trial court failed to consider "objective facts in the record that established substantial evidence of prejudice," focusing primarily on two factors: his ties to the United States and the asserted availability of an immigration-neutral plea. The record does not support his claim.

7

First, Osorio points to his U.S.-born children and the administrative closure of his removal proceedings, which allowed him to obtain a work permit. This evidence certainly reflects ties to the United States. But cases emphasizing this factor generally involve defendants who not only had significant ties to this country but also lacked meaningful ties to their country of origin. (See, e.g., *Vivar*, *supra*, 11 Cal.5th at p. 530 ["At the time of his plea, [Vivar] had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California. . . . Vivar had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.' "]; *People v. Lopez* (2022) 83 Cal.App.5th 698, 708 [prejudice established where the defendant moved to the United States at the age of 13, his entire family lived here, and he lacked meaningful ties to his country of origin]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 ["[A]t the time of his guilty pleas, Mejia had been living in the United States for eight years, since he was 14 years old . . . , Mejia's wife and infant son were living in the United States, as well as his mother and six siblings. Indeed, Mejia's only remaining family tie to Mexico was his father, who passed away just before Mejia entered his guilty pleas."]; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 325 [Rodriguez lacked meaningful ties to the country of birth].) That circumstance is not present here. Although Osorio has connections to the United States, the record shows he also maintained substantial ties to Guatemala. Notably, his wife, parents, and two children resided there. Osorio remains in regular contact with them and provides them with financial support.

Second, Osorio argues the record demonstrates an immigration-neutral plea was possible. Relying on a declaration from an immigration attorney,

Osorio asserts he could have pled to the same charge using a structured sentence that would have avoided immigration consequences.

But even assuming such a plea was *possible*, nothing in the record suggests such a plea was *available*. To the contrary, the prosecutor expressed skepticism regarding the type of sentence construction suggested by Osorio's expert, noting such arrangements had not been used in the county and would not have been feasible given Osorio's limited custody credits at the time of the plea: "With respect to . . . the construction of something where we waived credits, I've never seen that done in [San Mateo] county, and I would point out . . . that, in the prior, it shows he only had five days of credit at the time of the plea. So coming up with something where a 16-month sentence has all that – a waiver in it and the top-and-refer situation – I just don't think that's possible." In addition, the record indicates (1) the prosecution was focused on Osorio serving prison time, (2) the court rejected a probation-only or lower period of confinement and instead sentenced Osorio to the maximum time of confinement under the terms of the plea, and (3) Osorio's counsel stated he did not believe a shorter sentence could have been negotiated. These circumstances undermine Osorio's claim that an immigration-neutral negotiated disposition was realistically available.

Other *Espinoza* factors further weigh against a finding of prejudice. Most notably, the record suggests Osorio was unlikely to obtain "a more favorable outcome if he had rejected the plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Osorio faced multiple statutory rape charges and aggravated felonies that carried significant prison time and a lifetime sex-offender registration. The prosecution's case was supported by photographic evidence, a pretext call, and Osorio's knowledge of the minor's age. In light of the charges and this evidence, defense counsel did not believe "it was a good case

9

to put in front of a jury." Osorio's counsel also indicated that negotiating a shorter sentence would likely have required Osorio to plead to a more serious offense—which also may have resulted in adverse immigration consequences.

The record also indicates Osorio's "priorities in seeking a plea bargain" centered on avoiding incarceration rather than avoiding deportation. Nothing in the contemporaneous record reflected concern about immigration consequences. Instead, Osorio's statements focused on the financial and emotional impact imprisonment would have on his family. In his "present offense statement," Osorio "asked for leniency during sentencing," was "worried about being imprisoned as his children in Guatemala and his current family financially depend on him," and expressed concern about the impact on his children "if he was sentenced to prison." His sole request to the court was that he "be free."

Although Osorio now claims avoiding deportation was his primary concern, the trial court found "some credibility issues" with Osorio's testimony regarding his understanding of the plea and his sentence. The court explained such misrepresentations related directly to the plea proceedings and therefore undermined Osorio's credibility.

Considering the totality of the circumstances, Osorio did not establish a reasonable probability he would have rejected the plea had he understood its immigration consequences. Specifically, he has not demonstrated that he would have proceeded to trial on the charges or been able to negotiate an immigration-neutral disposition. The trial court therefore properly denied his motion to vacate under section 1473.7.

## DISPOSITION

The order denying Osorio's motion to vacate is affirmed.

10

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

A171074 / *People v. Osorio*

11